UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-23601

CIV - HUCK

FILED by _AL_ D.C.

OCT 03 2012

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES OF AMERICA,     )
                             )
            Plaintiff,        )
                             )
      v.                     )
                             )          FILED UNDER SEAL
KAREN KALLEN-ZURY,            )
                             )          MAGISTRATE JUDGE
            Defendant.        )          BANDSTRA
                             )

## UNITED STATES' *EX PARTE* COMPLAINT FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION

Plaintiff, the United States of America, by and through the undersigned attorneys, hereby alleges as follows:

### JURISDICTION AND VENUE

1.     The United States brings this action for a temporary restraining order, preliminary and permanent injunction, and other equitable relief pursuant to 18 U.S.C. § 1345.

2.     This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1345, and 28 U.S.C. §§ 1331 and 1345.

3.     This Court has personal jurisdiction over Defendant and venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because Defendant resides in this District or transacts business in this District and Defendant's actions that gave rise to this case occurred in this District.

## PARTIES

4.      Plaintiff is the United States of America.   At all times material to this action, the Department of Health and Human Services ("HHS") was an agency and instrumentality of the United States, and the Centers for Medicare and Medicaid Services ("CMS") was the component agency of HHS that administers and supervises the Health Insurance Program for the Aged and Disabled established by Title XVIII of the Social Security Act ("Act"), 42 U.S.C. §§ 1395 *et seq.* ("Medicare").

5.      Defendant KALLEN-ZURY is a resident of Broward County, Florida.   At all times relevant to this Complaint, KALLEN-ZURY has been the Chief Executive Officer of Hollywood Pavilion, LLC, a Florida corporation headquartered in Hollywood, Florida, that purports to offer both in-patient and outpatient psychiatric treatment.

### A.    The Medicare Program

6.      Medicare is a federally funded and administered health insurance program for certain groups, primarily elderly and disabled persons.   The Medicare program is divided into several "parts."   Among other services, "Part A" covers in-patient psychiatric hospitalization and "Part B" covers outpatient psychiatric treatment.   In the Southern District of Florida, CMS has contracted with First Coast Service Options ("FCSO") to process and pay all Part A and Part B claims, including those related to in-patient and outpatient psychiatric services.

7.      In order to be eligible to receive payment under the Medicare program, a healthcare provider must submit an enrollment application, which provides, in part:

> I agree to abide by the Medicare laws, regulations, and program instructions that apply to [me] . . . . I understand that payment of a claim by Medicare is conditioned upon the claims and the underlying transaction complying with such laws, regulations and program instructions (including, but not limited to the Federal anti-kickback statute and the Stark law), and on the

[provider's] compliance with all applicable conditions of participation in Medicare.

See 42 U.S.C. § 1395cc; CMS Form 855A (07/11).

8.     In addition to an enrollment application, psychiatric hospitals must also submit annual cost reports, which include the following notice:

> Misrepresentation or falsification of any information contained in this cost report may be punishable by criminal, civil and administrative action, fine and/or imprisonment under federal law.   Furthermore, if services identified in this report were provided or procured through the payment directly or indirectly of a kickback or were otherwise illegal, criminal, civil and administrative action, fines and/or imprisonment may result.

See CMS Form 2552-96.   As part of the cost report, the responsible provider official or administrator must certify, in pertinent part:

> . . . to the best of my knowledge and belief, it [the cost report] is a true, correct and complete report prepared from the books and records of the provider in accordance with applicable instructions, except as noted.
>
> I further certify that I am familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations.

See id.

9.     In addition, when a provider submits or causes to be submitted a claim to Medicare, the provider certifies that the contents of the claim are correct and complete.   See, e.g., CMS Form UB-92, HCFA 1450.

**B. The Kickback Scheme**

10.     The federal Anti-Kickback Statute ("AKS") proscribes any remuneration given in exchange for referring an individual for healthcare services in the context of Federal health care programs.   42 U.S.C. § 1320a-7b(b).   Specifically, the AKS prohibits:

> (1)     . . . . knowingly and willfully solicit[ing] or receiv[ing] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—

> (a) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program.

*Id.* When a provider submits claims to a federal healthcare program, the provider makes an implied representation that the claims are being submitted in compliance with the AKS. *United States ex rel. McNutt v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1259-60 (11th Cir. 2005). Thus, when an entity knowingly submits or causes the submission of claims resulting from an illegal remunerative arrangement, it has presented or caused the submission of a false or fraudulent claim to the United States in violation of the FCA.

11.     In this case, Hollywood Pavilion, through KALLEN-ZURY and others, paid kickbacks and bribes to individuals ("Patient Brokers") to obtain Medicare patients. KALLEN-ZURY and others at Hollywood Pavilion created false, fictitious, and phony contracts with these Patient Brokers in order to make the relationship appear legitimate.   The contracts purported to require the Patient Brokers to provide marketing or case management services. However, the payments to the Patient Brokers were not for legitimate marketing or case management services, but for the referral of Medicare beneficiaries to Hollywood Pavilion.

12.     KALLEN-ZURY and others at Hollywood Pavilion also instructed the Patient Brokers to create false, fictitious, and phony invoices for services that were not rendered in order to make the relationship appear legitimate.   The Patient Brokers faxed these invoices to the attention of KALLEN-ZURY and others.   Many of the invoices – for different months of the year – were substantively identical.   In some cases, the invoices state that Patient Brokers were allegedly working 20 to 23 hours per day on case management work.

13.     One of the Patient Brokers was Keith Humes, an individual who operated transitional housing in or near Hollywood, Florida.   On April 27, 2010, Humes pleaded guilty to

knowingly and willfully conspiring and agreeing with other to commit health care fraud, in

violation of 18 U.S.C. § 1349, and was sentenced to 7 years imprisonment.   See United States v.

Humes, 1:09-cr-21019-UU (S.D. Fla.) ("Humes").   In connection with his guilty plea, Humes

admitted that:

> [T]he defendant [Humes] conspired to violate the federal anti-kickback
> statute in connection with the following entities:   American Therapeutics,
> Inc. and Hollywood Pavilion, which were mental health facilities.   The
> defendant engaged in a kickback scheme involving the referral of Medicare
> beneficiaries to these facilities.   This scheme allowed these facilities to
> submit claims to Medicare in an amount between $2.5 million and $7
> million.

Agreed Factual Basis for Guilty Plea, Humes (Docket No. 117).

14.     Another of the Patient Brokers was Jean-Luc Veraguas, an individual who operated

several transitional houses in Plantation, Florida.   On September 24, 2012, Veraguas pleaded

guilty to knowingly and willfully conspiring and agreeing with others to commit health care fraud,

in violation of 18 U.S.C. § 1349, and was sentenced to 18 months of imprisonment followed by

three years of supervised release.   See United States v. Veraguas, 1:12-cr-20287-FAM (S.D. Fla.)

("Veraguas").   In connection with his guilty plea, Veraguas admitted that:

> VERAGUAS also agreed with operators of Hollywood Pavilion ("HP") to
> refer his residents [residents of transitional houses operated by Veraguas] to
> HP for purported mental health services in exchange for illegal health care
> kickbacks.   VERAGUAS knew that receiving such kickbacks for referring
> his residents for services that would be billed to Medicare was illegal.
> VERAGUAS also knew that many of his residents did not need those
> services.

Agreed Factual Basis for Guilty Plea, Veraguas (Docket No. 19).

15.     On cost reports sent to Medicare, Hollywood Pavilion, through KALEN-ZURY

and others, concealed the kickbacks and bribes paid to Patient Brokers by listing them as

reimbursable expenses.

5

C.      **Unnecessary Psychiatric Services**

16.     Medicare coverage is limited to medical services that are reasonable and necessary.

*See* 42 U.S.C. § 1395(a)(1)(A).

17.     For inpatient hospitalization at a psychiatric hospital such as Hollywood Pavilion,

Medicare specifies, among other things, that:

- The patient must not be able to be actively managed at a lower level of care and must require 24-hour, active treatment;

- The treatment must be structured and intensive, administered on a 24-hour basis, and tailored to the specific needs of the individual patient;

- The treating physician must certify (and, if necessary, recertify) to the medical necessity for the services, develop an individualized plan of treatment or diagnosis, evaluate the therapeutic program at least weekly, and regularly see the patient; and

- The documentation must include the physician certification(s), the initial psychiatric evaluation, progress notes from treating personnel, including the treating physician, physician's orders, and a treatment plan.

See Medicare Benefit Policy Manual, Chapter 2 ("In-patient Psychiatric Hospital Services");

FCSO Local Coverage Determination L28950 ("Psychiatric Hospitalization").

18.     For outpatient treatment at a psychiatric hospital such as Hollywood Pavilion,

Medicare specifies, among other things, that:

- The patient must have a qualifying psychiatric diagnosis:

- The treatment must be tailored to the individual patient;

- The treating physician must establish and periodically review the treatment plan, review the patient's medical records, supervise and direct the treating therapists, and periodically see the patient; and

- The documentation must state the patient's symptoms and medical history, the results of procedures and tests, and the patient's ability to participate in, and benefit from, treatment.

See Medicare Benefit Policy Manual, Chapter 6 ("Hospital Services Covered Under Part B").

19.     In this case, Hollywood Pavilion, through KALLEN-ZURY and others, billed Medicare for patients that did not qualify for mental health treatment.   Many of the patients referred to Hollywood Pavilion by the Patient Brokers did not suffer from mental problems, thereby rendering bills to Medicare purporting to provide in-patient and outpatient treatment for these patients false.

20.     In addition, the patients admitted to Hollywood Pavilion's in-patient facility did not receive in-patient psychiatric care under Medicare's standards.   These patients were treated almost exclusively by therapists, with little or no involvement by physicians.   When the Hollywood Pavilion medical director saw patients, he did so primarily to adjust their medications, not to provide individualized psychiatric counseling and treatment, and Hollywood Pavilion's medical director rarely engaged in periodic consultations with patients' treating therapists and staff.

**D.  Dissipation of Assets**

21.     From April 2003 through September 2012, Medicare paid Hollywood Pavilion over $39 million in fraud proceeds.   However, Hollywood Pavilion and KALLEN-ZURY do not have assets sufficient to account for the fraud proceeds received from Medicare.

22.     KALLEN-ZURY maintains assets in the form of monies in at least 20 bank accounts over which she has signing authority (collectively, the "Bank Accounts").   The Bank Accounts include KALLEN-ZURY's personal accounts and other accounts over which she has signing authority.   The assets in these accounts are being dissipated.   For example:

- KALLEN-ZURY has signing authority for an account at Wachovia under the name:  "Karen Kallen-Zury (Trust under Lenore Kallen 2007 Dynasty Trust)."   On August 31, 2012, this account had a balance of $1.22 million. However, in the last three weeks, over $800,000 has been removed from the account.   As of September 17, 2012, the account had only $423,367.53.

- KALLEN-ZURY has signing authority for an account at Bank Atlantic under the name: "High Ridge Management Corp. DBA Hollywood Pavilion or Hollywood Pavilion, LLC."   In July 2011, this account had a balance of $454,658.09.   However, nearly $400,000 has been removed from the account. As of September 26, 2012, the account had only $60,893.54.

- KALLEN-ZURY and her husband have a joint bank account at Wells Fargo. On July 10, 2012, the account balance was $71,964.   However, in one month, nearly $20,000 has been removed from the account.   As of August 8, 2012, the account had only $51,984.54.

23.     The total amount currently in all of the Bank Accounts is approximately $2.46 million.

24.     In addition to the Bank Accounts, KALLEN-ZURY also owns at least two cars, two boats, and one home (collectively, the "Real Properties").   The total equity in the Real Properties is approximately $740,000.

25.     There are currently no restraints on the Bank Accounts or the Real Properties. Thus, there exists the substantial possibility that these funds will be transferred or otherwise dissipated.

<u>**COUNT I**</u>
(Injunctive Relief)
(18 U.S.C. § 1345)

26.     The United States realleges and incorporates by reference paragraphs 1 through 25 of this Complaint as though fully set forth herein.

27.     Among other things, KALLEN-ZURY committed a Federal health care offense, as defined in 18 U.S.C. § 24, by attempting to execute and actually executing a scheme or artifice to defraud a health care benefit program (as defined by 18 U.S.C. § 24(b)) – specifically, Medicare – in connection with the delivery of or payment for health care benefits, items, or services, in violation of 18 U.S.C. § 1347.

28.    KALLEN-ZURY has already dissipated or caused the dissipation of substantial proceeds of that fraud, and intends to continue dissipating or causing the dissipation of the remainder of the proceeds of the fraud.

29.    KALLEN-ZURY's fraud upon Medicare is a fraud against the United States and constitutes a continuing and substantial injury to the United States and its citizens.

30.    The United States brings this action to protect Medicare and other funds by restraining KALLEN-ZURY's unlawful fraudulent conduct and to protect and restrain the transfer of funds and assets now in the hands or control of KALLEN-ZURY as ill-gotten gains from her fraud upon the Medicare program.

31.    Upon a showing that KALLEN-ZURY is committing or about to commit a Federal health care offense, the United States is entitled, under 18 U.S.C. § 1345(a)(1), to a temporary restraining order, a preliminary injunction, and a permanent injunction, restraining all future fraudulent conduct and any other action that this Court deems just in order to prevent a continuing and substantial injury to the United States.

32.    Upon a showing that KALLEN-ZURY is alienating or disposing, or intends to alienate or dispose, property obtained as the result of a Federal health care offense, the United States is entitled, under 18 U.S.C. § 1345(a)(2), to a temporary restraining order, a preliminary injunction, and a permanent injunction, enjoining defendants from alienating, disposing, withdrawing, transferring, removing, dissipating, or disposing of any property obtained as a result of a Federal health care offense, property traceable to such violation, or property of equivalent value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States of America prays that this Court issue a Temporary Restraining Order and Preliminary Injunction in this matter against KALLEN-ZURY to include all assets in her possession or control, and that a permanent injunction shall be issued forthwith, that orders that KALLEN-ZURY, her agents, servants, employees, attorneys, and all persons acting in concert and participation with her, including all corporations over which she exercises control and all banking and other financial institutions at which she does business, be enjoined as follows:

1. From withdrawing or transferring any moneys or sums presently deposited, or held on behalf of KALLEN-ZURY and all corporations and other entities over which she exercises control by any financial institution, trust fund, or other financial agency, public or private, that are proceeds from false, fictitious, or fraudulent claims made or caused to be made by KALLEN-ZURY, or any moneys of an equivalent value to those taken through false, fictitious, or fraudulent claims;

2. From transferring, selling, assigning, dissipating, concealing, encumbering, impairing or otherwise disposing of, in any manner, assets, real or personal;

3. To preserve all business, financial, and accounting records, including bank records, that detail KALLEN-ZURY's business operation and disposition of any payment made on behalf of the Medicare Program to KALLEN-ZURY and all corporations and other entities over which exercises control;

4. To preserve all medical records, including patient records, which relate to KALLEN-ZURY's business operation(s) and/or to services for which claims were submitted to the Medicare Program; and

10

5.    For such other and further relief as the Court shall deem just and proper.

Dated:    October __2__, 2012

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General
Civil Division

WIFREDO A. FERRER
United States Attorney
Southern District of Florida

By:    _____
MARK A. LAVINE
Assistant United States Attorney
Fla. Bar No. 648876
99 N.E. 4th St., 3rd Floor
Miami, FL   33132
Tel: (305) 961-9003
Fax: (305) 536-4101
Email: mark.lavine@usdoj.gov

_____
JOYCE R. BRANDA
JAMIE YAVELBERG
EDWARD CROOKE
Attorneys, Civil Division
U.S. Department of Justice
P. O. Box 261, Ben Franklin Station
Washington, D.C.   20044
(202) 353-0426

Attorneys for the United States